Bobby Saadian, Esq. SBN: 250377
Colin M. Jones, Esq. SBN: 265628
WILSHIRE LAW FIRM
3055 Wilshire Blvd., 12th Floor
Los Angeles, California 90010
Tel:  (213) 381-9988
Fax: (213) 381-9989

Attorneys for Plaintiff, Alejandro Flores

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO FLORES; individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br> vs.<br><br>RASIER, LLC., a Limited Liability Company; RASIER-CA, LLC., a Limited Liability Company; and UBER TECHNOLOGIES, INC., a corporation; DOES 1 through 15, inclusive,<br><br>     Defendants. | CASE NO.: 2:17-cv-8503<br><br>**CLASS ACTION COMPLAINT**<br><br>1. BREACH OF IMPLIED CONTRACT<br>2. NEGLIGENCE<br>3. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE § 17200 - UNLAWFUL BUSINESS PRACTICES<br>4. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §17200 UNFAIR BUSINESS PRACTICES<br>5. VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW CAL. BUS. & PROF. CODE §17200 FRAUDULENT/DECEPTIVE BUSINESS PRACTICES<br>6. UNFAIR AND DECEPTIVE BUSINESS PRACTICES<br>7. CONSTITUTIONAL INVASION OF PRIVACY<br>8. NEGLIGENCE *PER SE*<br>9. BREACH OF COVENANT OF DUTY OF GOOD FAITH AND FAIR DEALING<br>10. VIOLATION OF STATE DATA BREACH |

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

Acts

Plaintiff, Alejandro Flores ("Plaintiff"), by and through her counsel of record, on behalf of themselves and all others similarly situated bring this Class Action Complaint against against Rasier, LLC., a Limited Liability Company ("Rasier"), Rasier-CA, LLC., a Limited Liability Company ("Rasier-CA"), and Uber Technologies, Inc., a corporation, ("Uber") (Rasier, Rasier-LLC, and Uber are sometimes collectively referenced as "Uber Defendants" for ease of reading when the allegations implicate both entities) Plaintiffs alleges the following on information and belief, except as to those allegations specific to Plaintiffs, as follows:

## I.   NATURE OF THE ACTION

1.   Millions of customers book rides using Uber for their traveling needs. Consumers expect the highest quality of services when booking a ride. What consumers did not expect was that starting in October 2016, driver and rider's information was stolen. The information stolen included full name, driver's license, e-mail addresses, mobile phone numbers, credit card numbers, social security numbers, and date of birth. This is a data breach case.

2.   Plaintiffs, individually and on behalf of those similarly situated persons (hereafter "Class Members"), brings this Class Action to secure redress against Uber for their reckless and negligent violation of customer privacy rights. Plaintiffs and Class Members are former customers who booked rides, and were drivers in October 2016, at the time of the data breach.

3.   Plaintiffs and Class Members suffered injury.  The security breach compromised both riders and drivers' full name, driver's license, e-mail addresses, mobile phone numbers, credit card numbers, social security numbers, and date of birth, and other private identifiable information ("PII").

4.       As a result of Uber's wrongful actions and inactions, customer and driver's information were stolen.  Many of the customers who booked rides have had their PII compromised, have had their privacy rights violated, have been exposed to the risk of fraud and identify theft, and have otherwise suffered damages.

## II.    THE PARTIES

5.       Plaintiff Alejandro Flores is a California citizen residing in Los Angeles, California.

6.       Plaintiffs bring this action on his own behalf and on behalf of all others similarly situated, namely all other individuals who have worked as Uber Black, Uber Pool, Uber SUV, or UberX drivers in the United States, and on behalf of all riders who ordered Uber rides during or near the time of the data breach incident.

7.       Defendant Rasier, LLC. is a Limited Liability Company headquartered in San Francisco, California.

8.       Defendant Rasier-CA, LLC. is a Limited Liability Company headquartered in San Francisco, California.

9.       Defendant Uber Technologies, Inc. is a corporation headquartered in San Francisco, California. Defendant Uber Technologies is the parent company of Defendants Rasier and Rasier-CA.

10.      The Uber Defendants provide car service in cities throughout the country via an on demand dispatch system that enables users to hail a car service driver using a mobile phone through the User application, and which enables transportation providers to accept and fulfill such on-demand requests for transportation services by Users seeking transportation services through the use of a driver's application (collectively "Uber Software").

11.      At all relevant times, including during the Class Period,  the Uber Defendants and/or their agents distributed, implemented, warranted,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

disseminated, permitted, licensed, or otherwise caused the Uber Software to be used by drivers and Users.

12.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1 through 50, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiff will amend this Complaint to allege their true names and capacities when the same are ascertained.  Plaintiff is informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences and discriminatory acts alleged herein, and that Plaintiff's damages alleged herein were proximately caused by these Defendants.  When used herein, the term "Defendants" is inclusive of DOES 1 through 15.

13.     Plaintiff is informed and believes and thereon alleges that at all relevant times herein, each of the Defendants, including the Defendants sued herein as Does 1 through 50, were the agents, employees, and/or joint venturers of, or working in concert with the other Defendants, and were acting within the course and scope of such agency, employment, joint venture and/or concerted activity.  To the extent that said conduct and omissions were perpetrated by Defendants and their agents, Defendants confirmed and ratified said conduct and omissions.

14.     At all relevant times, including during the Class Period, each Defendant, including Does 1 through 50, acted as an agent, servant, employee, or joint venturer of the other Defendants, and in doing the things alleged acted within the course of such agency, employment, and/or in furtherance of the joint venture to accomplish the scheme. Each of the Defendants' acts alleged herein was done with the permission and consent of the other Defendant. While each of the Defendants are separate legal entities, each Defendant works together under a common identity as portrayed to the public and there is a sufficient unity of

CLASS ACTION COMPLAINT

1   interest and control between each Defendant such that the acts of one are for the

2   benefit and can be imputed to the acts of the other.

3        15.    Whenever and wherever reference is made in this Complaint to any

4   act by a Defendant or Defendants, such allegations and reference shall also be

5   deemed to mean the acts and failures to act of each Defendant acting

6   individually, jointly, and severally.

7   **III.**   **JURISDICTION AND VENUE**

8        16.    This Court has subject matter jurisdiction over the state law claims

9   asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2),

10  since some of the Class Members are citizens of a State different from the

11  Defendant and, upon the original filing of this complaint, members of the

12  putative Plaintiffs class resided in states around the country; there are more than

13  100 putative class members; and the amount in controversy exceeds $5 million.

14       17.    The Court also has personal jurisdiction over the Parties because

15  Uber conducts a major part of their national operations with regular and

16  continuous business activity in California, with an advertising budget both not

17  exceeded in other jurisdictions throughout the United States.

18       18.    Venue is appropriate because, among other things: (a) Plaintiffs are

19  resident and citizen of this District; (b) the Defendants had directed their

20  activities at residents in this District; (b) the acts and omissions that give rise to

21  this Action took place, among others, in this judicial district.

22       19.    Venue is further appropriate pursuant to 28 U.S.C. § 1391 because

23  Defendants conduct a large amount of their business in this District, and

24  Defendants have substantial relationships in this District.  Venue is also proper in

25  this Court because a substantial part of the events and omissions giving rise to the

26  harm of the Class Members occurred in this District.

27  **IV.**   **SUBSTANTIVE ALLEGATIONS**

28  ***A.***    ***The Data Breach Unravels***

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

20.     On November 21, 2017, Uber's new CEO, Dara Khosrowshahi disclosed that "I recently learned that in late 2016 we became aware that two individuals outside the company had inappropriately accessed user data stored on a third-party cloud-based service that we use." 2016 Data Security Incident, available at: https://www.uber.com/newsroom/2016-data-incident.

21.     This disclosure was made more than a year later, customers, and drivers had no chance to protect their identity, and their information.

**B.     Stolen Information Is Valuable to Hackers and Thieves**

22.     It is well known, and the subject of many media reports, that payment card data is highly coveted and a frequent target of hackers.  Especially in the technology industry, the issue of data security and threats thereto, is well known. Despite well-publicized litigation and frequent public announcements of data breaches, Uber opted to maintain an insufficient and inadequate system to protect the payment information of Plaintiffs and Class Members. Legitimate organizations and criminal underground alike recognize the value of PII. Otherwise, they would not aggressively seek or pay for it.  As previously seen in one of the world's largest breaches, hackers compromised the card holder data of 40 million customers.  *See* "Target: 40 million credit cards compromised," CNN Money, Dec. 19, 2013, *available* at http://money.cnn.com/2013/12/18/news/companies/target-credit-card/  (attached hereto as Exhibit A).

23.     Credit or debit card information is highly valuable to hackers.  Credit and debit card information that is stolen from the point of sale are known as "dumps."  *See* Krebs on Security April 16, 2016, Blog Post, *available at* https://krebsonsecurity.com/2016/04/all-about-fraud-how-crooks-get-the-cvv/ (attached hereto as Exhibit B).  Credit and debit card dumps can be sold in the cybercrime underground for a retail value of about "$20 apiece."  *Id.*  This information can also be used to clone a debit or credit card.  *Id.*

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

6

*C.      The Data Breach Has and Will Result in Additional Identity Theft and Identity Fraud*

24.     Uber failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

25.     Security flaws and other infirmities were explicitly outlined by Visa, as early as 2009, when it issued a Data Security Alert outlining the threat of RAM scraper malware. The report instructs companies to "[s]ecure remote access connectivity," "[i]mplement a secure network configuration, including egress and ingress filtering to only allow the ports/services necessary to conduct business" (i.e., segregate networks), "actively monitor logs of network components, including IDS [intrusion detection systems] and firewalls for suspicious traffic, particularly outbound traffic to unknown addresses," "[e]ncrypt cardholder data anywhere it is being stored and [] implement[] a data field encryption solution to directly address cardholder data in transit" and "[w]ork with your payment application vendor to ensure security controls are in place to prevent unauthorized modification to the payment application configuration."

26.     All merchants that accept customer payments via payment cards, including Defendants, are obligated and required to comply with the Payment Card Industry Data Security Standards (the "PCI DSS"). *How to Be Compliant: Getting Started with PCI Data Security Standard Compliance*, PCI SSC, *available at* https://www. pcisecuritystandards.org/merchants/how_to_be_compliant.php (last visited June 24, 2015) (stating "[i]f you are a merchant that accepts payment cards, you are required to be complaint with the PCI [DSS]."). Compliance with the PCI DSS is common practice in the retail industry.  The PCI DSS, among other things, mandates merchants to protect cardholder data, PCI DSS v. 3.0 at 34 (Nov. 2013),7 requires merchants to install and maintain firewalls, *id.* at 19, forbids merchants from using default settings and passwords for applications and devices, *id.* at 28,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

requires merchants to segment cardholder data, *id.* at 61, and requires merchants to identify and authenticate their system users. *Id.* at 64.

27.     Additionally, sub-requirement 3.2 of the PCI DSS requires merchants and other organizations involved in payment card transactions to refrain from storing sensitive authentication data after authorization (even if it is encrypted). *See id.* at 35. To adhere to the PCI DSS, a merchant must, *inter alia*:

> First, **Assess** -- identify cardholder data, take an inventory of your
> IT assets and business processes for payment card processing, and
> analyze them for vulnerabilities that could expose cardholder data.
> Second, **Remediate** -- fix vulnerabilities and do not store cardholder
> data unless you need it. Third, **Report** -- compile and submit required
> remediation validation records (if applicable), and submit compliance
> reports to the acquiring bank and card brands you do business with.

(emphasis in original). *How to Be Compliant: Getting Started with PCI Data Security Standard Compliance*, PCI SSC, *available at* https://www.pcisecuritystandards.org/merchants/how_to_be_compliant.php (last visited June 24, 2015).

28.     The ramification of Uber's failure to keep Plaintiffs' and Class Members' data secure is severe.

29.     According to Javelin Strategy and Research, "one in every three people who is notified of being a potential fraud victim becomes one . . . with 46% of consumers who had cards breached becoming fraud victims that same year." "Someone Became an Identity Theft Victim Every 2 Seconds Last Year," Fox Business, Feb. 5, 2014 *available at* http://www.foxbusiness.com/personal-finance/2014/02/05/someone-became-identitytheft-victim-every-2-seconds-last-year.html (attached hereto as Exhibit C).

30.     It is incorrect to assume that reimbursing a consumer for a financial loss due to fraud makes that individual whole again.  On the contrary, after

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, 29% spent a month or more resolving problems."   *See* "Victims of Identity Theft," U.S. Department of Justice, Dec 2013, *available at* https://www.bjs.gov/content/pub/pdf/vit12.pdf (attached hereto as Exhibit D).   In fact, the BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims." *Id*. at 11.

### D.       *Annual Monetary Losses from Identity Theft are in the Billions of Dollars*

31.       Javelin Strategy and Research reports that those losses increased to $21 billion in 2013.   *See* 2013 Identity Fraud Report (attached hereto as Exhibit E). There may be a time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.  GAO, Report to Congressional Requesters, at 33 (June 2007), *available* at http://www.gao.gov/new.items/d07737.pdf (attached hereto as Exhibit F)

32.       Plaintiffs and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent credit and debit card charges incurred by them and the resulting loss of use of their credit and access to funds, whether or not such charges are ultimately reimbursed by the credit card companies.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

33.    As Chief Judge Lasnik observed when sentencing a thief of PII, "identity theft can create huge emotional problems for people. We often think of bank fraud as just against a bank or just money, but it damages real people." Press Release, United States Attorney's Office, Western District of Washington, Member of ID Theft Ring That Preyed on Starbucks' Employees Sentenced to Prison (June 2, 2006), *available at* http://www.usdoj.gov/usao/waw/press/2006/jun/nguyen.htm (last visited Apr. 28, 2009). Chief Judge Lasnik also noted that the damage of identity theft isn't just financial, "it causes rifts between husbands and wives, it causes divorces." *Id.*

## E.    *Plaintiffs and Class Members Suffered Damages*

34.    The data breach was a direct and proximate result of Uber's failure to properly safeguard and protect Plaintiffs' and Class Members' PII from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and the common law, including Uber's failure to establish and implement appropriate administrative, technical, and physical safeguards to ensure the security and confidentiality of Plaintiffs' and Class Members' PII to protect against reasonably foreseeable threats to the security or integrity of such information.

35.    Plaintiffs and Class Members' PII is private and sensitive in nature and was inadequately protected by Uber.  Uber did not obtain Plaintiffs' and Class Members' consent to disclose their PII, except to certain persons not relevant to this action, as required by applicable law and industry standards.

36.    As a direct and proximate result of Uber's wrongful action and inaction and the resulting data breach, Plaintiffs and Class Members have been placed at an imminent, immediate, and continuing increased risk of harm from identity theft and identity fraud, requiring them to take the time and effort to mitigate the actual and potential impact of the subject data breach on their lives by, among other things, placing "freezes" and "alerts" with credit reporting agencies,

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT

contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring their credit reports and accounts for unauthorized activity.

37. As a result of this breach of security, Plaintiffs' and other Class members' debit cards and credit cards were exposed and subjected to unauthorized charges; their bank accounts were overdrawn and credit limits exceeded; they were deprived of the use of their cards and access to their funds; their preauthorized charge relationships were disrupted; they were required to expend time, energy and expense to address and resolve these financial disruptions and mitigate the consequences; and they suffered consequent emotional distress and their credit and debit card information is at an increased risk of theft and unauthorized use.

38. Plaintiffs' and class members were deprived of use of their cards for appreciable periods of time and were unable to access their accounts or their funds; customers lost accumulated miles and points toward bonus awards and were unable to earn points during the interval their cards were inactivated; customers who requested that their cards be cancelled were required to pay fees to issuing banks for replacement cards; customers who had registered their cards with online sellers were required to cancel and change their registered numbers; customers who had given creditors pre-authorization to charge their debit cards or credit cards for recurring payments were required to change the pre-authorizations; customers were placed in non-payment status by virtue of their cards being overdrawn or abruptly cancelled and were required to pay penalties and service reinstatement fees; customers purchased identity theft insurance and credit monitoring services to protect themselves against possible consequences of the breach; customers suffered emotional distress as they were forced to cope with the unauthorized charges and other consequences of Defendant's' data breach, and some customers are still not aware of the data breach or that their data has been compromised.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT

39.    Some of the Plaintiffs' and class members did not cancel their debit and credit cards and continue to experience fraudulent activity on their accounts.

40.    Plaintiffs have suffered sufficiently concrete injuries for the purposes of Article III standing.  The current rule in the Ninth Circuit comes from *Spokeo* ruling after remand from the United States Supreme Court.  *See Robins v. Spokeo, Inc.*, No. 11-56843 (9th Cir. Aug. 15, 2017).  The "risk of real harm" is sufficient in this circumstance to constitute injury in fact.  *Id*.; *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 578 (1992).  The nature of a data breach, makes it so that the threatened injury is "certainly impending" as opposed to merely speculative.  *Clapper v. Amnesty International USA,* 133 S. Ct. 1138, 1147-48 (2013).  The reason for that, is that the very nature of a data breach stems from individuals attempting to use the stolen information – this "intangible injury" has already occurred.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).  The harm in a data breach occurs to every affected individual that has had their information acquired without their consent. Whether anticipated conduct or an anticipated injury is likely to happen after a breach is beside the point.  Just as in *Spokeo II*, the court did not suggest that "Congress's ability to recognize such injuries turns on whether they would also result in additional future injuries that would satisfy *Clapper*."  *See, e.g., Spokeo II*, 136 S. Ct. at 1553 (Thomas, J., concurring).

41.    Uber's wrongful actions and inaction directly and proximately caused the theft and dissemination into the public domain of Plaintiffs and Class Members' PII, causing them to suffer, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

a.    Theft of their PII;

b.    The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals and already misused via the sale of Plaintiffs' and Class Members' information on the Internet black market;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

c.      The untimely and inadequate notification of the data breach;

d.      The improper disclosure of their PII;

e.      Loss of privacy;

f.      Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach;

g.      Ascertainable losses in the form of deprivation of the value of their PII, for which there is a well-established national and international market;

h.      Overpayments to Uber for booking rides and fees to drivers during the subject data breach in that a portion of the price paid for such booking by Plaintiffs and Class Members to Uber was for the costs of reasonable and adequate safeguards and security measures that would protect customers' PII, which Uber and its affiliates did not implement and, as a result, Plaintiffs and Class Members did not receive what they paid for and were overcharged by Uber; and

i.      Deprivation of rights they possess under the Unfair Competition Laws.

## V.      CLASS ACTION ALLEGATIONS

42.      Plaintiffs brings this action on their own behalf and pursuant to the Federal Rules of Civil Procedure Rule 23(a), (b)(2), (b)(3), and (c)(4), Plaintiffs seeks certification of a Nationwide class and a California class.  The nationwide class is initially defined as follows:

> All persons residing in the United States whose PII was disclosed in the data breach in 2016 (the "Nationwide Class").

The California class is initially defined as follows:

All persons residing in California whose PII was disclosed in the data breach in 2016 (the "California Class").

43.   Excluded from each of the above Classes are Uber, including any entity in which Uber has a controlling interest, is a parent or subsidiary, or which is controlled by Uber, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Uber.   Also excluded are the judges and court personnel in this case and any members of their immediate families.   Plaintiffs reserves the right to amend the Class definitions if discovery and further investigation reveal that the Classes should be expanded or otherwise modified.

44.   *Numerosity*. Fed. R. Civ. P. 23(a)(1). The members of the Classes are so numerous that the joinder of all members is impractical. While the exact number of Class Members is unknown to Plaintiffs at this time, Uber has acknowledged that customers' PII was stolen for a period of over a year.   The disposition of the claims of Class Members in a single action will provide substantial benefits to all parties and to the Court.   The Class Members are readily identifiable from information and records in Uber's possession, custody, or control.

45.   *Commonality*. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Classes, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.   Whether Uber owed a duty of care to Plaintiffs and Class Members with respect to the security of their personal information;

b.   Whether Uber took reasonable steps and measures to safeguard Plaintiffs' and Class Members' personal information;

c.   Whether Uber violated California's Unfair Competition Law by failing to implement reasonable security procedures and practices;

d.   Whether Uber violated common and statutory law by

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

failing to promptly notify Class Members their Private Identifiable Information had been compromised;

e.  Which security procedures and which data-breach notification procedure should Uber be required to implement as part of any injunctive relief ordered by the Court;

f.  Whether Uber has an implied contractual obligation to use reasonable security measures;

g.  Whether Uber has complied with any implied contractual obligation to use reasonable security measures;

h.  Whether Uber acts and omissions described herein give rise to a claim of negligence;

i.  Whether Uber knew or should have known of the security breach prior to its November 2017 disclosure;

j.  Whether Uber had a duty to promptly notify Plaintiffs and Class Members that their personal information was, or potentially could be, compromised;

k.  What security measures, if any, must be implemented by Uber to comply with its implied contractual obligations;

l.  Whether Uber violated California's privacy laws in connection with the acts and omissions described herein;

m.  What the nature of the relief should be, including equitable relief, to which Plaintiffs and the Class Members are entitled;

n.  Whether Uber willfully and/or negligently violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*; and

o.  Whether Plaintiffs and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

46.     *Typicality*. Fed. R. Civ. P. 23(a)(3).  Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was misused and/or disclosed by Uber.

47.     *Adequacy of Representation*. Fed. R. Civ. P. 23(a)(4).  Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiffs have retained competent counsel experienced in litigation of class actions, including consumer and data breach class actions, and Plaintiffs intend to prosecute this action vigorously.   Plaintiffs' claims are typical of the claims of other members of the Class and Plaintiffs has the same non-conflicting interests as the other Members of the Class.  The interests of the Class will be fairly and adequately represented by Plaintiffs and their counsel.

48.     *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Classes is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

49.     Damages for any individual class member are likely insufficient to justify the cost of individual litigation so that, in the absence of class treatment, Uber's violations of law inflicting substantial damages in the aggregate would go un-remedied.

50.     Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Uber has acted or has refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

## COUNT I

### Breach of Implied Contract

16

(On Behalf of Plaintiffs and the Nationwide and California Classes)

51.     Plaintiffs incorporate the substantive allegations contained in each and every paragraph of this Complaint.

52.     Uber's system solicited and invited Plaintiffs and the members of the Class to book rides, and for drivers to drive customers.  Plaintiffs and Class Members accepted Uber's offers and booked rides through Uber.

53.     When Plaintiffs and Class Members booked rides through Uber, they provided their Private Identifiable Information.  In so doing, Plaintiffs and Class Members entered into implied contracts with Uber to which Uber agreed to safeguard and protect such information and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised.

54.     Each booking made with Uber's system by Plaintiffs and Class Members was made pursuant to the mutually agreed-upon implied contract with Uber and the drivers using their system under which Uber agreed to safeguard and protect Plaintiffs' and Class Members' Private Identifiable Information and to timely and accurately notify them if such information was compromised or stolen.

55.     Plaintiffs and Class Members would not have provided and entrusted their Private Identifiable Information to Uber in the absence of the implied contract between them and Uber.

56.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with Uber.

57.     Uber breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect the Private Identifiable Information of Plaintiffs and Class Members and by failing to provide timely and accurate notice to them that their Private Identifiable Information was compromised as a result of the data breach.

58.     As a direct and proximate result of Uber's breaches of the implied contracts between Uber and Plaintiffs and Class Members, Plaintiffs and Class

**WILSHIRE LAW FIRM, PLC**
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

17

Members sustained actual losses and damages as described in detail above.

## COUNT II

### Negligence

(On Behalf of Plaintiffs and the Nationwide and California Classes)

59.     Plaintiffs repeats and fully incorporates the allegations contained in each and every paragraph of this Complaint.

60.     A special relationship exists between Defendants and the Consumer Plaintiffs and the Class.  Defendants actively solicited Consumer Plaintiffs and the other Class members to use their PII in sales transactions at Defendants' stores. When Consumer Plaintiffs and the other Class members gave their PII to Defendants to facilitate and close sales transactions, they did so with the mutual understanding that Defendants had reasonable security measures in place and Defendants would take reasonable steps to protect and safeguard the PII of Consumer Plaintiffs and the other Class members. Consumer Plaintiffs and the other Class members also gave their PII to Defendants on the premise that Defendants were in a superior position to protect against the harms attendant to unauthorized access, theft and misuse of that information.

61.     Upon accepting Plaintiffs' and Class Members' Private Identifiable Information in their respective point-of-sale systems, Uber undertook and owed a duty to Plaintiffs and Class Members to exercise reasonable care to secure and safeguard that information from being compromised, lost, stolen, misused, and or/disclosed to unauthorized parties, and to utilize commercially reasonable methods to do so.  This duty included, among other things, designing, maintaining, and testing Uber's security systems to ensure that Plaintiffs' and the Class Members' PII was adequately secured and protected.

62.     Uber further had a duty to implement processes that would detect a breach of its security system in a timely manner.

63.     Uber had a duty to timely disclose to Plaintiffs and Class Members

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

that their Private Identifiable Information had been or was reasonably believed to have been compromised.  Timely disclosure was appropriate so that, among other things, Plaintiffs and Class Members could take appropriate measures to avoid use of bank funds, and monitor their account information and credit reports for fraudulent activity.

64.     Uber breached its duty to discover and to notify Plaintiffs and Class Members of the unauthorized access by failing to discover the security breach within reasonable time and by failing to notify Plaintiffs and Class Members of the breach until November of 2017.  To date, Uber has not provided sufficient information to Plaintiffs and Class Members regarding the extent and scope of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and the Class.

65.     Uber also breached its duty to Plaintiffs and Class Members to adequately protect and safeguard this information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Identifiable Information. Furthering its negligent practices, Uber failed to provide adequate supervision and oversight of the Private Identifiable Information with which it is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted a third party to gather Plaintiffs' and Class Members' Private Identifiable Information, misuse the Private Identifiable Information, and intentionally disclose it to others without consent.

66.     Through Uber's acts and omissions described in this Complaint, including Uber's failure to provide adequate security and its failure to protect Plaintiffs' and Class Members' Private Identifiable Information from being foreseeably captured, accessed, disseminated, stolen, and misused, Uber unlawfully breached its duty to use reasonable care to adequately protect and secure Plaintiffs and Class Members' Private Identifiable Information during the

1    time it was within Uber's control.

2        67.    Further, through its failure to timely discover and provide clear

3    notification of the data breach to consumers, Uber prevented Plaintiffs and Class

4    Members from taking meaningful, proactive steps to secure their Private

5    Identifiable Information.

6        68.    Upon information and belief, Uber improperly and inadequately

7    safeguarded the Private Identifiable Information of Plaintiffs and Class Members

8    in deviation from standard industry rules, regulations, and practices at the time of

9    the data breach.

10       69.    Uber's failure to take proper security measures to protect Plaintiffs

11   and Class Members' sensitive PII as described in this Complaint, created

12   conditions conducive to a foreseeable, intentional criminal act, namely the

13   unauthorized access of Plaintiffs and Class Members' Private Identifiable

14   Information.

15       70.    Uber's conduct was grossly negligent and departed from all

16   reasonable standards of care, including, but not limited to: failing to adequately

17   protect the Private Identifiable Information; failing to conduct adequate regular

18   security audits; failing to provide adequate and appropriate supervision of persons

19   having access to Plaintiffs' and Class Members' Private Identifiable Information.

20       71.    Neither Plaintiffs nor the other Class Members contributed to the data

21   breach and subsequent misuse of their Private Identifiable Information as described

22   in this Complaint.  As a direct and proximate result of Uber's negligence, Plaintiffs

23   and Class Members sustained actual losses and damages as described in detail

24   above.

## **COUNT III**

### **Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §**
### **17200 Unlawful Business Practices**

(On Behalf of the California Class)

CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

72.     Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

73.     Uber has violated Cal. Bus. and Prof. Code §17200 et seq. by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code §17200.  Uber engaged in unlawful acts and practices with respect to its services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and Class Members' Private Identifiable Information with knowledge that the information would not be adequately protected; and by gathering Plaintiffs' and Class Members' Private Identifiable Information in an unsecure electronic environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Uber to take reasonable methods of safeguarding the Private Identifiable Information of Plaintiffs and the Class Members.

74.     In addition, Uber engaged in unlawful acts and practices with respect to its services by failing to discover and then disclose the data breach to Plaintiffs and Class Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.  To date, Uber has still not provided such sufficient information to Plaintiffs and the Class Members.

75.     As a direct and proximate result of Uber's unlawful acts and practices, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their Private Identifiable Information, and additional losses described above.

76.     Uber knew or should have known that its system had been breached and data security practices were inadequate to safeguard Class Members' Private Identifiable Information and that the risk of a data breach or theft was highly likely.  Uber's actions in engaging in the above-named unlawful practices and acts were

negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Class Members.

77.     Plaintiffs and members of the Classes seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq*., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Uber may have acquired by means of its unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Uber because of its unlawful and unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT IV

### Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 Unfair Business Practices

(On Behalf of the California Class)

78.     Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

79.     Uber engaged in unfair acts and practices by soliciting and collecting Plaintiffs' and Class Members' Private Identifiable Information with knowledge that the information would not be adequately protected; while Plaintiffs' and the Class Members' Private Identifiable Information would be processed in an unsecure electronic environment.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members.  They were likely to deceive the public into believing their Private Identifiable Information was secure, when it was not.  The harm these practices caused to Plaintiffs and the members of the Class outweighed their utility, if any.

80.     Uber engaged in unfair acts and practices with respect to the provision of its services by failing to enact adequate privacy and security measures and protect Class Members' Private Identifiable Information from further unauthorized

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

disclosure, release, data breaches, and theft, and failing to timely discovery and give notice of the Data Breach.  These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and Class Members. They were likely to deceive the public into believing their Private Identifiable Information was secure, when it was not.  The harm these practices caused to Plaintiffs and the Class Members outweighed their utility, if any.

81.     As a direct and proximate result of Uber's acts of unfair practices and acts, Plaintiffs and the members of the Class were injured and lost money or property, including but not limited to the loss of their legally protected interest in the confidentiality and privacy of their PII, and additional losses described above.

82.     Uber knew or should have known that its systems and data security practices were inadequate to safeguard Class Members' Private Identifiable Information and that the risk of a data breach or theft was highly likely.  Uber's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the Class Members.

83.     The members of the Class seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq*., including, but not limited to, restitution to Plaintiffs and Class Members of money or property that the Uber may have acquired by means of its unfair business practices, restitutionary disgorgement of all profits accruing to Uber because of its unfair business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## COUNT V

### Violation of California's Unfair Competition Law Cal. Bus. & Prof. Code §17200 Fraudulent/Deceptive Business Practices

(On Behalf of the California Class)

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

84.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

85.   Uber engaged in fraudulent and deceptive acts and practices by representing and advertising that it would maintain adequate data privacy and security practices and procedures to safeguard the Class Members' Private Identifiable Information from unauthorized disclosure, release, data breaches, and theft; and representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of the members of the Class' Private Identifiable Information.  These representations were likely to deceive members of the public, including Plaintiffs and Class Members, into believing their Private Identifiable Information was securely stored, when it was not, and that Uber was complying with relevant law, when it was not.

86.   Uber engaged in fraudulent and deceptive acts and practices by omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for Class Members' Private Identifiable Information.  At the time that Class Members were booking rides through Uber's system, Uber failed to disclose to Class Members that its data security systems failed to meet legal and industry standards for the protection of their Private Identifiable Information.  Plaintiffs would not have booked rides with Uber if they had known about its substandard data security practices.  These representations were likely to deceive members of the public, including Plaintiffs and the Class Members, into believing their Private Identifiable Information was secure, when it was not, and that Uber was complying with relevant law and industry standards, when it was not.

87.   As a direct and proximate result of Uber's deceptive practices and acts, Plaintiffs and the Class Members were injured and lost money or property, including but not limited to the loss of their legally protected interest in the

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

confidentiality and privacy of their Private Identifiable Information, and additional losses described above.

88.     Uber knew or should have known that its system and data security practices were inadequate to safeguard Class Members' PII and that the risk of a data breach or theft was highly likely.  Uber's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Class Members.

89.     Class Members seek relief under Cal. Bus. & Prof. Code § 17200, *et. seq.*, including, but not limited to, restitution to Plaintiffs and Class Members of money or property that Uber may have acquired by means of its fraudulent and deceptive business practices, restitutionary disgorgement of all profits accruing to Uber because of its fraudulent and deceptive business practices, declaratory relief, attorney's fees and costs (pursuant to Cal. Code Civ. Proc. §1021.5), and injunctive or other equitable relief.

## COUNT VI

### Unfair and Deceptive Business Practices

(On Behalf of the Nationwide Class)

90.     Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

91.     Plaintiffs bring this Count individually, and on behalf of all similarly situated residents of each of the 50 States and the District of Columbia, aside from the state of California, for violations of the respective statutory consumer protection laws, as follows:

a.     the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

b.     the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

c.     the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

d.    the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

e.    the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

f.    the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

g.    the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

h.    the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

i.    the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

j.    the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

k.    the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

l.    the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

m.    the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

n.    the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*

o.    the Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

p.    the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

q.    the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

r.    the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

s.    the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

t.    the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

u.    the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

CLASS ACTION COMPLAINT

v.    the Michigan Consumer Protection Act, M.C.L.A. 445.901, *et seq*.;

w.    the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq*.;

x.    the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq*.

y.    the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq*.;

z.    the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq*.;

aa.   the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq*.;

bb.   the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq*.;

cc.   the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq*.;

dd.   the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq*.;

ee.   the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq*.;

ff.   the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq*.;

gg.   the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

hh.   the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

ii.   the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

jj.   the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

kk.   the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

ll.   the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

mm.   the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12th Floor
Los Angeles, CA 90010-1137

5.2(B), *et seq.*;

nn.   the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq.*;

oo.   the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq.*;

pp.   the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq.*;

qq.   the Texas Deceptive Trade Practices-Consumer Protection Act, V.T.C.A., Bus. & C. § 17.41, *et seq.*;

rr.   the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq.*;

ss.   the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq.*;

tt.   the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq.*;

uu.   the Washington Consumer Protection Act, RCWA 19.86.010, *et seq.*;

vv.   the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq.*;

ww.   the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq.*; and

xx.   the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq.*

92.   Uber violated the statutes set forth above (collectively, the "Consumer Protection Acts") by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiffs and Class Members' PII, and by allowing third parties to access Plaintiffs' and Class Members' PII.

93.   Uber further violated the Consumer Protection Acts by failing to disclose to the consumers that its data security practices were inadequate, thus

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

inducing consumers to schedule and book rides through Uber.

94.     Uber's acts and/or omissions constitute fraudulent, deceptive, and/or unfair acts or omissions under the Consumer Protection Acts.

95.     Plaintiffs and other Class Members were deceived by Uber's failure to properly implement adequate, commercially reasonable security measures to protect their PII.

96.     Uber intended for Plaintiffs and other Class Members to rely on Uber to protect the information furnished to it in connection with debit and credit card transactions and/or otherwise collected by Uber, in such manner that Plaintiffs' PII would be protected, secure and not susceptible to access from unauthorized third parties.

97.     Uber instead handled Plaintiffs' and other Class Members' information in such manner that it was compromised.

98.     Uber failed to follow industry best practices concerning data security or was negligent in preventing the Data Breach from occurring.

99.     It was foreseeable that Uber's willful indifference or negligent course of conduct in handling PII it collected would put that information at the risk of compromise by data thieves.

100.    On information and belief, Uber benefited from mishandling the PII of customers, by not taking effective measures to secure this information, and therefore saving on the cost of providing data security.

101.    Uber's fraudulent and deceptive acts and omissions were intended to induce Plaintiffs' and Class Members' reliance on Uber's deception that their Private Information was secure.

102.    Uber's conduct offends public policy and constitutes unfair acts or practices under the Consumer Protection Acts because Uber caused substantial injury to Class Members that is not offset by countervailing benefits to consumers or competition, and is not reasonably avoidable by consumers.

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

103.   Uber's acts or practice of failing to employ reasonable and appropriate security measures to protect Private Information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a), which the courts consider when evaluating claims under the Consumer Protection Acts, including 815 ILCS 505/2.

104.   Uber's conduct constitutes unfair acts or practices as defined in the Consumer Protection Acts because Uber caused substantial injury to Class members, which injury is not offset by countervailing benefits to consumers or competition and was not reasonably avoidable by consumers.

105.   Plaintiffs and other Class Members have suffered injury in fact and actual damages including lost money and property as a result of Uber's violations of the Consumer Protection Acts.

106.   Uber's fraudulent and deceptive behavior proximately caused Plaintiffs' and Class Members' injuries, and Uber conducted itself with reckless indifference toward the rights of others, such that an award of punitive damages is appropriate.

107.   Uber's failure to disclose information concerning the Data Breach directly and promptly to affected customers, constitutes a separate fraudulent act or practice in violation of the Consumer Protection Acts.

108.   Plaintiffs seek attorney's fees and damages to the fullest extent permitted under the Consumer Protection Acts, including N.Y. G.B.L. § 349(h).

## COUNT VII

### Constitutional Invasion of Privacy

(On Behalf of the California Class)

109.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

110.   Cal. Const., Art. 1., section 1 provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

30

enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

111.   Plaintiffs and Class members had a legally protected privacy interest in the Private Identifiable Information provided to Uber.

112.   Plaintiffs and Class Members had a reasonable expectation of privacy as to the Private Identifiable Information they provided to Uber under the circumstances of their purchases.

113.   Uber's actions and inactions amounted to a serious invasion of the protected privacy interests of Plaintiffs and Class Members.

114.   Uber's invasion of Plaintiffs and Class Members' reasonable expectation of privacy caused Plaintiffs and Class members to suffer damages.

<u>**COUNT VIII**</u>

**Negligence *Per Se***

(On Behalf of Plaintiffs and the Nationwide and California Classes

115.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

116.   Pursuant to the Federal Trade Commission Act (15 U.S.C. §45), Uber had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII.

117.   Pursuant to the Gramm-Leach-Bliley Act (15 U.S.C. § 6801), Uber had a duty to protect the security and confidentiality of Plaintiffs' and Class Members' PII.

118.   Pursuant to state laws in the following 12 states, Uber operating in those states had a duty to those respective states' Class Members to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' Personal Information:

a.   Arkansas: Ark. Code § 4-110-104

b.   California: Cal Civ. Code § 1798.81.5

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT

c.  Connecticut: Conn. Gen. Stat. § 42-471

d.  Florida: Fla. Stat. § 501.171(2)

e.  Indiana: Ind. Code § 24-4.9-3.5

f.  Maryland: Md. Code. Comm. Law § 14-5303

g.  Massachusetts: Mass. Gen Laws Ch. 93H, § 3(a)

h.  Nevada: Nev. Rev. Stat. § 603A.210

i.  Oregon: Ore. Rev. Stat. § 646A.622(1)

j.  Rhode Island: R.I. Gen Laws § 11-49.2-2(2)

k.  Texas: Tex. Bus. & Com. Code § 521.052(a)

l.  Utah: Utah Code § 14-44-201(1)(a)

119.  Uber breached their duties to Plaintiffs and Statewide Class Members under the Federal Trade Commission Act (15 U.S.C. § 45), Gramm-Leach-Bliley Act (15 U.S.C. § 6801), and the state reasonable data security statutes by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Personal Information.

120.  Uber's failure to comply with applicable laws and regulations constitutes negligence *per se*.

121.  But for Uber's wrongful and negligent breach of their duties owed to Plaintiffs and Statewide Class Members, Plaintiffs and Statewide Class Members would not have been injured.

122.  The injury and harm suffered by Plaintiffs and Statewide Class Members was the reasonably foreseeable result of Uber's breach of their duties. Uber knew or should have known that they were failing to meet their duties, and that Uber's breach would cause Plaintiffs and Statewide Class Members to experience the foreseeable harms associated with the exposure of their Personal Information.

123.  As a direct and proximate result of Uber negligent conduct,

Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT IX

### Breach of the Covenant of Duty of Good Faith and Fair Dealing

(On Behalf of Plaintiffs and the Nationwide and California Classes)

124.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

125.   The law implies a covenant of good faith and fair dealing in every contract.

126.   Plaintiffs and Class Members contracted with Defendant by accepting Defendant's offers and paying for the booking of rides.

127.   Plaintiffs and Class Members performed all of the significant duties under their agreements with Defendant.

128.   The conditions required for Uber's performance under the contract has occurred.

129.   Uber did not provide and/or unfairly interfered with and/or frustrated the right of Plaintiffs and the Class Members to receive the full benefits under their agreement.

130.   Uber breached the covenant of good faith and fair dealing implied in its contracts with Plaintiffs and the Class Members by failing to use and provide reasonable and industry-leading security practices.

131.   Plaintiffs and the Class Members were damaged by Uber's  breach in that they paid for, but never received, the valuable security protections to which they were entitled, and which would have made their products and services more valuable.

## COUNT X

CLASS ACTION COMPLAINT

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

## Violation of State Data Breach Acts

(On Behalf of Plaintiffs and the Nationwide and California Classes)

132.   Plaintiffs repeats and fully incorporates the allegations contained in each and every allegation of this Complaint.

133.   Uber owns, licenses and/or maintains computerized data that includes Plaintiffs' and Class Members' PII.

134.   Uber was required to, but failed, to take all reasonable steps to dispose, or arrange for the disposal, of records within its custody or control containing PII when the records were no longer to be retained, by shredding, erasing, or otherwise modifying the personal information in those records to make it unreadable or undecipherable through any means.

135.   Uber's conduct, as alleged above, violated the data breach statutes of many states, including:

    a.   California, Cal. Civ. Code §§ 1798.80 et. seq.;

    b.   Hawaii, Haw. Rev. Stat. § 487N-1–4 (2006);

    c.   Illinois, 815 Ill. Comp. Stat. Ann. 530/1–/30 (2006);

    d.   Louisiana, La. Rev. Stat. § 51:3071-3077 (2005), and L.A.C. 16:III.701;

    e.   Michigan, Mich. Comp. Laws Ann. §§ 445.63, 445.65, 445.72 (2006);

    f.   New Hampshire, N.H. Rev. Stat. Ann. §§ 359-C:19–C:21, 358-A:4 (2006)., 332-I:1–I:610;

    g.   New Jersey, N.J. Stat. Ann. § 56:8-163–66 (2005);

    h.   North Carolina, N.C. Gen. Stat. §§ 75-65 (2005); as amended (2009);

    i.   Oregon, Or. Rev. Stat. §§ 646A.602, 646A.604, 646A.624 (2011);

    j.   Puerto Rico, 10 L.P.R.A. § 4051; 10 L.P.R.A. § 4052 (2005), as

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12th Floor
Los Angeles, CA 90010-1137

amended (2008);

k. South Carolina, S.C. Code § 1-11-490 (2008); S.C. Code § 39-1-90 (2009);

l. Virgin Islands, 14 V.I.C. § 2208, et seq. (2005);

m. Virginia, Va. Code Ann. § 18.2-186.6 (2008); Va. Code Ann. § 32.1– 127.1:05 (2011); and

n. the District of Columbia, D.C. Code § 28-3851 to 28-3853 (2007) (collectively, the "State Data Breach Acts").

136.   Uber was required to, but failed, to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach.

137.   The Data Breach constituted a "breach of the security system" within the meaning of section 1798.82(g) of the California Civil Code, and other State Data Breach Acts.

138.   The information compromised in the Data Breach constituted "personal information" within the meaning of section 1798.80(e) of the California Civil Code, and other State Data Breach Acts.

139.   Like other State Data Breach Acts, California Civil Code § 1798.80(e) requires disclosure of data breaches "in the most expedient time possible and without unreasonable delay . . . ."

140.   Uber violated Cal. Civ. Code § 1798.80(e) and other State Data Breach Acts by unreasonably delaying disclosure of the Data Breach to Plaintiffs and other Class Members, whose PII was, or was reasonably believed to have been, acquired by an unauthorized person.

141.   Upon information and belief, no law enforcement agency instructed Uber that notification to Plaintiffs and Class Members would impede a criminal investigation.

142.   As a result of Uber's violation of State Data Breach Acts, including

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

Cal. Civ. Code § 1798.80, et seq., Plaintiffs and Class Members incurred economic damages, including expenses associated with monitoring their personal and financial information to prevent further fraud.

143.    Plaintiffs, individually and on behalf of the Class, seek all remedies available under Cal. Civ. Code § 1798.84 and under the other State Data Breach Acts, including, but not limited to: (a) actual damages suffered by Class Members as alleged above; (b) statutory damages for Uber's willful, intentional, and/or reckless violation of Cal. Civ. Code § 1798.83; (c) equitable relief; and (d) reasonable attorneys' fees and costs under Cal. Civ. Code §1798.84(g).

144.    Because Uber was guilty of oppression, fraud or malice, in that it failed to act with a willful and conscious disregard of Plaintiffs' and Class Members' rights, Plaintiffs also seek punitive damages, individually and on behalf of the Class.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Uber as follows:

A.    For an Order certifying the Nationwide Class and California Class as defined here, and appointing Plaintiffs and her Counsel to represent the Nationwide Class and the California Class;

B.    For equitable relief enjoining Uber from engaging in the wrongful conduct complained of here pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Identifiable Information, and from refusing to issue prompt, complete, and accurate disclosures to the Plaintiffs and Class Members;

C.    For equitable relief compelling Uber to utilize appropriate methods and policies with respect to consumer data collection, storage, and

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd., 12ᵗʰ Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT

safety and to disclose with specificity to Class Members the type of PII compromised.

D.   For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Uber's wrongful conduct;

E.   For an award of actual damages and compensatory damages, in an amount to be determined;

F.   For an award of costs of suit and attorneys' fees, as allowable by law; and

G.   Such other and further relief as this court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Based on the foregoing, Plaintiffs, on behalf of themselves, and all others similarly situated, hereby demand a jury trial for all claims so triable.

Dated: November 21, 2017                    Respectfully Submitted,

/s/    *Colin M. Jones, Esq.*
_____
Colin M. Jones, Esq. SBN: 265628
Attorneys for Plaintiffs

WILSHIRE LAW FIRM, PLC
3055 Wilshire Blvd, 12ᵗʰ Floor
Los Angeles, CA 90010-1137

CLASS ACTION COMPLAINT