UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter |
| Attorneys Present for Plaintiff(s): | | Attorneys Present for Defendant(s): |
| Not Present | | Not Present |

**Proceedings (In Chambers):**   **The Court GRANTS Defendants' motion to compel arbitration**

Before the Court is Defendants' Uber Technologies, Inc., Rasier, LLC, and Rasier-CA, LLC's ("Defendants" or "Uber") motion to compel arbitration. *See* Dkt. # 45 ("*Mot.*"). Plaintiffs Alejandro Flores, Robert Comperini, Alan Salazar, Andrew Lozeau, Bridget Saidi, Nicole Stokes, Elaina Mohead, Matthew Scott, and Marcus Brown ("Plaintiffs") oppose, *see* Dkt. # 50 ("*Opp.*"), and Defendants replied, *see* Dkt. # 51 ("*Reply*").  The Court finds this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); L.R. 7-15.  Having considered the moving papers, the Court **GRANTS** Defendants' motion to compel arbitration.

I.   Background

Uber is a technology company that offers a smartphone application (the "Uber App") that connects riders ("Riders") looking for transportation to drivers ("Drivers") based on their location. *Mot.* 2.  Uber offers the App as a tool to both Drivers and Riders in over 175 cities across the country.  *Id.* 3.  Drivers and Riders, including Plaintiffs, must create an account operated by Defendants in order to use the service.  Uber requires its users to provide personally identifiable information ("PII") upon registering as either a Driver or Rider via its website or mobile phone application.   PII that Uber collects includes such information as names, email addresses, telephone numbers, dates of birth, credit card numbers, bank account numbers, Social Security numbers, driver's license numbers, and trip location histories.  *See* Dkt. # 1, *Complaint* ("*Compl.*") ¶ 3.

   A   Uber's Terms and Conditions

Plaintiffs used the Uber App as both Riders and Drivers.  *See id.* ¶ 2.  The Services Agreement governing use of the App contains an arbitration provision ("the Arbitration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

Agreement"). The Arbitration Agreement, which is prominently displayed in bolded, capitalized font on the first page of the Services Agreement, states:

> **PLEASE REVIEW THE ARBITRATION PROVISION SET FORTH BELOW CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH THE COMPANY ON AN INDIVIDUAL BASIS, EXCEPT AS PROVIDED IN SECTION 15.3, THROUGH FINAL AND BINDING ARBITRATION UNLESS YOU CHOOSE TO OPT OUT OF THE ARBITRATION PROVISION.**

Dkt. # 45-2, *Declaration of Greg DiMattina* ("*DiMattina Decl.*") Ex. D (emphasis in original). The Services Agreement also includes a clearly labeled "**Dispute Resolution**" provision, which states:

> You and [Uber] agree that any dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof or the use of the Service or Application (collectively, "Disputes") will be settled by binding arbitration . . . .

*Id*. Ex. E (emphasis in original). This provision includes an agreement to resolve claims on an individual rather than class-wide basis. *Id*. Notably, it also delegates to an arbitrator all questions about the enforceability and scope of the Arbitration Agreement. It states:

> The parties agree that the arbitrator ("Arbitrator") and not any federal, state, or local court or agency, shall have exclusive authority to resolve any disputes relating to the interpretation, applicability, enforceability or formation of this Arbitration Agreement, including any claim that all or any part of this Arbitration Agreement is void or voidable. *The Arbitrator shall also be responsible for determining all threshold arbitrability issues*, including issues relating to whether the Terms are unconscionable or illusory and any defense to arbitration, including waiver, delay, laches or estoppel.

*Id*. ("Rules and Governing Law") (emphasis added).

Further, the Agreement specifies (1) that the arbitrator will apply the "Consumer Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes (the 'AAA Rules') then in effect," and (2) that the "Federal Arbitration Act will govern [the] interpretation and enforcement" of the Agreement. *Id*.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

    B.    <u>The 2016 Data Breach and Present Litigation</u>

In late 2016, users' PII was subject to a massive data security breach, in which hackers accessed Uber's data ("2016 Breach"). *Id.* ¶ 5. Hackers obtained the names, emails, and phone numbers of Uber Drivers and Riders in the United States, as well as driver's license numbers for 600,000 Drivers. *Id.* ¶ 4. Overall, the 2016 Breach affected approximately 600,000 Drivers' and 57 million Riders' PII. *Id.*

Uber did not reveal the 2016 Breach for a full year. *Id.* ¶ 21. Uber released a statement on its website on November 21, 2017, publicly exposing details of the 2016 Breach for the first time. *Id.* ¶ 20. According to the statement by Defendant CEO Dara Khosrowshahi, Defendants learned of the data breach as early as "late 2016" but did not inform or notify Uber users that their PII might be compromised as a result of the breach. *Id.*

Plaintiffs bring this action for themselves and on behalf of a nationwide class of Drivers and Riders. *Id.* ¶ 42. The nationwide class is defined as "all persons residing in the United States whose PII was disclosed in the data breach in 2016." *Id.* They also seek certification of a California class, defined as "all persons residing in California whose PII was disclosed in the data breach in 2016." *Id.* They assert causes of action for (1) breach of implied contract; (2) negligence; (3) violation of California Business & Professions Code § 17200, unlawful business practices; (4) violation of California Business & Professions Code § 17200, unfair business practices; (5) violation of California Business & Professions Code § 17200, fraudulent/deceptive business practices; (6) unfair and deceptive business practices; (7) constitutional invasion of privacy; (8) negligence per se; (9) breach of the covenant of good faith and fair dealing; and (10) violation of state data breach acts. *See generally id.* On April 16, 2018, the Judicial Panel on Multidistrict Litigation consolidated the proceedings under the heading *In re: Uber Technologies, Inc., Data Security Breach Litigation*, and transferred the case to this Court. *See* Dkt. # 59.

Defendants move to compel arbitration, arguing that the arbitration provision ("the Arbitration Agreement") to which Plaintiffs assented when they registered to become Drivers for Uber delegates threshold issues of arbitrability to an arbitrator. *See generally Mot.*

II.    <u>Legal Standard</u>

"The 'principal purpose' of the FAA [Federal Arbitration Act] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The FAA states that written arbitration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis in original). When deciding whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

If an arbitration agreement exists and covers the dispute at issue, § 4 of the FAA "requires courts to compel arbitration in accordance with the terms of the agreement." *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted).

III. Discussion

The Court first notes that Plaintiffs do not challenge the validity or applicability of the Driver agreements, thereby conceding that the Drivers' disputes are subject to arbitration; their opposition addresses only the Rider agreements. *See generally Opp*.

Plaintiffs argue that events surrounding the 2016 Breach fall outside the scope of the Arbitration Agreement, the Agreement is unconscionable, and Riders were not on reasonable notice of the Agreement such that a contract was formed. *See generally id*. The Court will address each argument in turn.

    A.    Scope of the Agreement

"The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 123 S. Ct. 588, 591 (2002) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) (emphasis added)). When parties have not contracted otherwise, issues of substantive

Case 2:17-cv-08503-PSG-GJS Document 62 Filed 09/05/18 Page 5 of 7 Page ID #:848

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

arbitrability–validity and applicability–are decided by courts, and issues of procedural arbitrability–time limits, notice, laches, estoppel, etc.–are decided by arbitrators. *Id.* at 592. However, "clear and unmistakable" evidence of an agreement to also submit issues of *substantive* arbitrability to an arbitrator can take the form of the parties' conduct or an express statement in the agreement itself. *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011).

Plaintiffs argue that the "collection and storage of Plaintiffs' PII is not a part of Defendants' services," and thus falls outside the scope of Uber's Terms. *Opp.* 7. They argue that Uber's Privacy Policy, not its Service Agreement, governs the collection of user data, and consequently the 2016 Breach violates the Privacy Policy, but does not implicate the Arbitration Agreement. *Id.*

As Defendants note, whether or not the 2016 Breach gives rise to the types of claims contemplated by the Arbitration Agreement is precisely the threshold question that is delegated to the arbitrator. *See Reply* 3. Courts must enforce delegation provisions unless Plaintiffs "contest the validity of the delegation provision in particular." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 74 (2010). Where Plaintiffs do not attack the delegation provision itself, and there is "clear and unmistakable evidence" that the agreement between the parties delegated threshold issues of arbitrability to the arbitrator, courts must not decide the issue. *First Options*, 514 U.S. at 944 (quoting *AT&T Techs.*, 475 U.S. 643 at 649.

The Services Agreement that Plaintiffs assented to as Riders expressly provides that "disputes arising out of or relating to the interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision . . . shall be decided by an Arbitrator and not by a court or judge." *DiMattina Decl.* Ex. D. It also clearly states that "[t]he Arbitrator shall also be responsible for determining all threshold arbitrability issues"—such as whether a certain claim falls within the scope of the Agreement. The Ninth Circuit has held that a nearly identical Uber delegation provision "clearly and unmistakably" delegated threshold issues of arbitrability to an arbitrator. *See Mohammed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (holding that "the enforceability, revocability or validity of the Arbitration Provision"—the same language used here—was clear delegation language). Other courts have also found the same delegation provision dispositive. *See Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 892 (N.D. Ill. 2016) ("This Court agrees with the Ninth Circuit and the numerous district courts that have found this delegation clause clear and unmistakable in delegating the question of arbitrability to an arbitrator") (collecting cases); *Olivares v. Uber Techs. Inc.*, No. 16 C 6062, 2017 WL 3008278, at *3–4 (N.D. Ill. July 14, 2017) ("Pursuant to that arbitration agreement, of which plaintiff did not opt out, the Court finds that the arbitrator is responsible for determining the threshold issue[s]"); *Lathan v. Uber Techs., Inc.*, 266 F. Supp. 3d 1170, 1173–74 (E.D. Wis. 2017) ("Plaintiff challenges the enforceability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

and validity of the arbitration provision but those issues are plainly within the scope of the delegation provision."). Plaintiffs cite to numerous cases in which the claims at issue were found not within the scope of the Arbitration Agreement, arguing that the 2016 Breach is similarly not contemplated by the Agreement. *See Opp.* 5–6. Plaintiffs' argument is unavailing, however, because Uber's delegation clause, unlike those in the cases cited by Plaintiffs, clearly delegates the threshold issue of arbitrability to the arbitrator; the Court, then, cannot assess whether the 2016 Breach falls within the Arbitration Agreement.

Like the Ninth Circuit and other courts, this Court, too, determines that the language in the delegation provision clearly and unmistakably delegates the question of whether the 2016 Breach falls within the Arbitration Agreement ("disputes relating to . . . application of this Arbitration Provision") to the arbitrator.

    B.    <u>Unconscionability</u>

Similarly, whether the Arbitration Agreement itself is unconscionable is a question expressly delegated to the arbitrator. Plaintiffs argue that the Agreement is procedurally and substantively unconscionable. *See Opp.* 10–16. The Court has determined there is "clear and unmistakable" evidence of an agreement to also submit issues of substantive arbitrability, such as whether the Agreement is unconscionable, to an arbitrator. *Momot*, 652 F.3d 982 at 988.

    C.    <u>Reasonable Notice of Terms</u>

Finally, Plaintiffs argue that Riders were not put on reasonable notice of the Terms, and therefore did not assent to them. *Opp.* 18–21. They allege that the Terms were not "conspicuously called to Plaintiffs' attention," and consequently Plaintiffs did not "unambiguously manifest assent to those terms and conditions." *Id.* 19.

Plaintiffs' argument rests primarily on the fact that the registration process features a link to the Terms that says, "By continuing, you confirm that you have read and agree to the Terms & Conditions and Privacy Policy," *see id.* 19; the button that allows a user to advance to the next screen is labeled "NEXT." *Id.*; *see also* Dkt. # 46, *Declaration of Tony Dieppa* ¶ 9, Ex. K. "NEXT," argues Plaintiffs, "does not mean 'I agree'." *Opp.* 20. Plaintiffs suggest that Uber could have required a user to click "I agree" or "I accept," which "would have made the user's manifestation of assent or rejection more likely." *Id.* Plaintiffs rely solely on the fact that Uber's *Driver* registration process requires the user to click a button stating, "Yes, I agree," confirming the user has read and agreed to the contract, but the *Rider* registration process does not provide the same notice. *Id.* 21. Plaintiffs offer no evidence or declarations stating that they were in fact confused or that they failed to notice the link to the Terms or assent to its contents,

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | 17-CV-8503-PSG-GJS | Date | September 5, 2018 |
|---|---|---|---|
| Title | Alejandro Flores, et al v. Uber Technologies et al | | |

nor do they address the many cases in which courts have upheld Uber's Rider registration process as providing sufficient notice.

      In *Meyer v. Uber Techs., Inc.*, the Second Circuit, analyzing the Rider registration process under California law, held that the process (the same one used here) provided reasonably conspicuous notice of the Terms. *See Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 71, 77 (2nd Cir. 2017) (holding terms were conspicuous where they "advise the user that he or she is agreeing to the terms of service when registering or signing up"). Other courts are in accord. *See Cordas v. Uber Techs., Inc.*, 228 F. Supp.3d 985, 992 (N.D. Cal. 2017) (clicking "DONE" on a page that states, "By creating an Uber account, you agree to the Terms & Conditions" manifests assent); *Cubria v. Uber Techs., Inc.*, 242 F. Supp. 3d 541, 548 (W.D. Tex. 2017) (same). And, as the court in *Meyer* noted, whether Plaintiffs *actually* clicked on the hyperlink and read the Terms is irrelevant, because "[a]s long as the hyperlinked text was itself reasonably conspicuous . . . a reasonably prudent user would have constructive notice of the terms." *Meyer*, 868 F.3d at 79. The Court finds no reason to depart from this reasoning here.

IV.    Conclusion

      For the foregoing reasons, the Court **GRANTS** Defendants' motion to compel arbitration.

      This case is **STAYED** pending completion of the arbitration. The case is also administratively closed and may be reopened by the filing of an ex parte application by any party.

      **IT IS SO ORDERED**.